**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CHRISTOPHER JACKSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:11-cv-91

Spiegel, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Christopher Jackson filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June 2004, Plaintiff filed an application Disability Insurance Benefits (DIB) alleging a disability onset date of June 17, 2003 due to both physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On December 7, 2006, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 519-74). On February 22, 2007, ALJ Deborah Smith denied Plaintiff's application in a written decision. (Tr. 34-43). The Appeals Council remanded the case for further development on

November 7, 2007.[1]  An additional hearing was held on September 10, 2008.  (Tr. 599-632).  At the hearing, ALJ Smith heard testimony from Plaintiff and Dr. George Parsons, an impartial vocational expert.  Thereafter, on October 10, 2008, ALJ Smith again denied Plaintiff's application in a written decision.  (Tr. 15-24).

The record on which the ALJ's decision was based reflects that Plaintiff was 27 years old at the time of his application, and a high school graduate.  (Tr. 23).  Plaintiff had past relevant work as a control operator, installer, cable lineman, bike worker and installation technician.  (Tr. 23).  Plaintiff last worked in June 2003.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "residual back and neck impairments due to injuries sustained in a motor vehicle accident; also a pain disorder, depression, anxiety, and alcohol abuse." (Tr. 17).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court.  (Tr. 19).  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC"):

> Physically, he can perform sedentary work as defined in 20 CFR 404.1567(a).  Mentally, he has no restriction (i.e., absent or minimal limitation) in his ability to understand, remember and carry out simple instructions and make judgments on simple work-related decisions; there is a mild restriction (i.e., slight limitation, but can generally function well) in ability to understand, remember and carry out complex work-related decisions; and he has a moderate restriction (i.e., more than a slight but still able to function satisfactorily) in an ability to interact appropriately with the

---

[1] In its remand order, the Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's mental impairments and evaluate those impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a.  (Tr. 84-86).

> public, supervisors, and coworkers and in his ability to respond appropriately
> to usual work situations and to changes in a routine wok setting.

(Tr. 20). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 23-24). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 24).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by rejecting the opinions of Plaintiff's treating psychologists. As discussed below, the Court finds the ALJ's decision is not supported by substantial evidence and should be remanded.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national

4

economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

**B. Plaintiff's Assignments of Error are Well-Taken**

Plaintiff's Statement of Errors focuses solely on the ALJ's evaluation of his mental impairments and does not challenge the ALJ's findings relating to his physical limitations. Specifically, Plaintiff argues that the ALJ erred in discounting the findings of his treating psychologists, Dr. Wander and Dr. Downey. For the reasons that follow, the undersigned finds that the ALJ's RFC failed to properly consider Plaintiff's mental impairments in accordance with agency regulations and controlling law, thereby requiring remand.

1. *The ALJ's decision*

As noted above, at step-two of the sequential evaluation the ALJ found Plaintiff's depression and anxiety to be severe impairments. (Tr. 17). At step-three, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings for mental disorders. As stated by the ALJ:

> The paragraph B criteria indicate no more than a mild restriction in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, or pace. There are no episodes of decompensation, and the paragraph C criteria of 12.04 and 12.06 are not met.

(Tr. 19).

The ALJ also found that Plaintiff "is clearly able to maintain attention and concentration for activities he enjoys, such as drawing on a sketch pad in the woods for hours on end." (Tr. 20). In light of the foregoing and as detailed above, the ALJ determined that Plaintiff was capable of performing sedentary work with certain mild to moderate restrictions in light of his mental impairments. (Tr. 20). Notably, the ALJ's RFC did not

5

include any restrictions or exceptions related to Plaintiff's ability to maintain concentration, persistence or pace.

In making these findings, the ALJ rejected the assessments of Plaintiff's treating psychologists, Dr. Downy and Dr. Wander. Notably, Plaintiff treated with a psychologist, Dr. Wander, from January 2006 to November 2007, seeing him about 10 times during that period. (Tr. 395-96, 398, 402). On November 26, 2007, Dr. Wander provided an assessment of Plaintiff's ability to perform work-related activities wherein she found Plaintiff had fair-to-poor abilities in eighteen work-related mental functions. (Tr. 409-11). With respect to the "B" criteria, Dr. Wander found Plaintiff has poor ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention/concentration, understand remember and carry out even simple job instructions, and demonstrate reliability. Dr. Wander further opined that Plaintiff's concentration and ability to focus, irritability, poor ability to carry out directions, problems interacting interpersonally, depressed mood and low self-esteem all together will seriously hamper his ability to consistently perform work-like activities. (Tr. 408-11). In support of his opinions, Dr. Wander cited to Plaintiff's reports of interpersonal problems, anger, irritability, low self esteem and depressed mood; she also indicated that he had concentration problems and became easily frustrated with tasks. (Tr. 409-11).

Similarly, on September 5, 2008, Dr. Downy, a psychologist who began treating Plaintiff in 2007, found that Plaintiff had poor-to-no abilities in eighteen work related mental functions. (Tr. 496-99). Specifically, Dr. Downy found that Plaintiff has no ability to maintain attention/concentration due to his depressive symtomology. (Tr. 497). Dr. Downey concluded that Plaintiff had no transferable skills, and that his "current level of

pain, physical restrictions and emotional distress" rendered him "unemployable." (Tr. 499).

The ALJ gave "little weight" to the findings of both Dr. Downy and Dr. Wander. The ALJ explained that Dr. Wander's November 2007 assessment was not supported by any explanation or evidence of record and was inconsistent with other record evidence. (Tr. 41). With respect to Dr. Downy, the ALJ found that his opinions were unsupported by objective evidence and merely reiterated Plaintiff's subjective assertions and complaints. (Tr. 21). The ALJ further found that "claimant's hobby of drawing for hours at a time suggests he can indeed maintain concentration and attention to detail." (Tr. 21).

Instead, the ALJ purportedly relied on the findings of Dr. Eggerman and Dr. Fridman, state agency psychologists who each examined Plaintiff on one occasion. Dr. Eggerman examined Plaintiff in January 2008 and concluded that Plaintiff had minimal limitations in his abilities to make judgments on simple work-related decisions, and to understand, remember and carry out short and simple instructions. (Tr. 480, 483-85). He further opined that Plaintiff had mild limitations in his ability to understand, remember and carry out detailed instructions; mild-to-moderate limitations in his ability to respond to changes in a work setting; and moderate limitations in his abilities to relate to others and to respond to work pressures. (Tr. 480, 483-85). Dr. Friedman examined Plaintiff in July 2008. Dr. Friedman did not make express findings relating to the B criteria. However, he diagnosed Plaintiff with depressive disorder and assigned him a GAF score of 58.[2] (Tr. 494). Dr.

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34 .The DSM-IV categorizes individuals with scores of 51-60 as having "moderate" symptoms. *Id.*

7

Fridman concluded that Plaintiff could not return to his former employment based on his difficulty with social interaction; he also noted "difficulty with general energy level and ability to motivate himself." (Tr. 495).

*2. Applicable Law and Regulations*

The controlling regulation, 20 C.F.R. § 404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* Likewise, the ultimate "determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Thus, an ALJ may reject a treating physician's opinions on such issues, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).

Additionally, the regulations provide a "special technique" for evaluating the severity of a mental impairment at steps two and three. 20 C.F.R. § 404.1520a(a). This special technique must be followed at each level in the administrative review process. *Id.* At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B

criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. 20 C.F.R. § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. 20 C.F.R. § 404.1520a(d)(2).

At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). *Id.*

Importantly, the regulations require an ALJ to document the application of this special technique in the written decision. 20 C.F.R. . § 404.1520a(e). Thus, the regulations require an ALJ's written decision to "incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* The decision must also "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* At step three, the ALJ's decision must "record the presence or absence of the criteria [of the listing] and the rating of the degree of

functional limitation." 20 C.F.R. . § 404.1520a(d)(2).

Here, the reasons given by the ALJ in rejecting the assessments of Dr. Wander and Dr. Dowey, at least in part, were not made in accordance with Agency regulations and do not find substantial support in the record. Notably, with respect to the paragraph B criteria, the ALJ rejected Dr. Downy's and Dr. Wander's findings that Plaintiff had no or poor ability to maintain attention concentration because "claimant's hobby of drawing for hours at a time suggests he can indeed maintain concentration and attention to detail." (Tr. 21).[3] Although, the ALJ gave significant weight to the findings of Dr. Eggerman and Dr. Fridman; neither Dr. Eggerman nor Dr. Fridman made any explicit findings relating to Plaintiff's ability to maintain concentration persistence or pace. Thus, the ALJ's finding in this regard clearly indicates that he inserted his own non-medical opinion relating to the limitations caused by Plaintiff's depression and anxiety. This was clear error.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making this determination, the ALJ, in part, impermissibly acted as his own medical expert. *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by

---

[3] The ALJ's determination in this regard appear to be based on the findings of Dr. Eggerman. During his examination with Dr. Eggerman, Plaintiff reported that "his hobbies include 'art' and he "enjoys drawing and states he'll spend 4-6 hours per day drawing." (Tr. 478). Notably, however, Plaintiff testified at the hearing that he often sits in the woods with a pad and paper and looks at the paper and simply loses his thought and has nothing on the paper after several hours. (Tr. 618).

10

this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm' r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187–88 (E.D. Mich. 1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Here, the reasons given by the ALJ in rejecting Plaintiff's treating psychologists' findings was based, in part, on the ALJ's own interpretation of the medical evidence, and therefore do not qualify as "good reasons" as required under the regulations*. See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004) (The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the evidence of record). As found by the Sixth Circuit in *Wilson*, even where the decision of the Commissioner is supported by substantial evidence, reversal is required where the agency fails to follow its own procedural regulations and where the regulation was intended to protect applicants. *Id.*

Accordingly, this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law. On remand, the ALJ should be again instructed to apply the "special technique" for evaluating the severity of a mental impairment at steps two and

three to the evidence in this case and make specific findings relating to the degree of limitation in each of the functional areas under the "B" criteria. *See* 20 C.F.R. § 404.1520a; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.[4]

Additionally, on remand, the ALJ should also be mindful of the Sixth Circuit's recent decision in *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), wherein the Court held that a hypothetical question limiting the claimant to simple, unskilled, routine jobs did not sufficiently account for moderate deficiencies in concentration, persistence, and pace. Here, the ALJ purportedly determined that the evidence of record indicates that Plaintiff had moderate difficulties maintaining concentration, persistence or pace in light of his mental impairments. (Tr. 19). However, the ALJ's hypothetical question(s) to the vocational expert does not clearly identify an individual with such moderate limitations. (Tr. 623-24).

## III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand

---

[4] As detailed above, the regulations require the ALJ to document the applicable factors outlined in 20 C.F.R. § 404.1520a(e)(2) for evaluating mental disorders and make specific findings relating to the B criteria. The ALJ's decision must also "record the presence or absence of the criteria [of the listing] and the rating of the degree of functional limitation." 20 C.F.R. 404.1520a(d)(2). The ALJ's decision in this regard is unclear. In his decision, in evaluating the Plaintiff's mental impairments under the Listings, the ALJ states "the paragraph B criteria indicate no more than a mild restriction in activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace." (Tr. 19). Despite finding that Plaintiff had such moderate limitations, the ALJ went on to state that Plaintiff "is clearly able to maintain concentration for activities that he enjoys, such as drawing on a sketch pad in the woods for hours on end." *Id.* Furthermore, the ALJ failed to include any limitations or exceptions relating to Plaintiff's ability to maintain concentration, persistence or pace in his RFC assessment, despite his previous determination that Plaintiff was moderately limited in such areas.

under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) properly assess and evaluate the opinion evidence; and 2) properly evaluate Plaintiff's mental impairments using the special technique outlined in 20 C.F.R. 404.1520a and provide a clear explanation for the conclusions reached therein.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                           *s/Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

CHRISTOPHER JACKSON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:11-cv-91

Spiegel, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).